IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00983-GPG-KAS

JOHN ROSA,

     Plaintiff,

v.

MCALLISTER, El Paso County Deputy,
CARTER, El Paso County Deputy, and
BONK, El Paso County Sergeant,

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

     This matter is before the Court on the Defendants' **Motion to Dismiss Plaintiff's**

**Second Amended Complaint[1] Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)** [#41]

(the "Motion"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#46][3] to the

Motion [#41], and Defendants filed a Reply [#49]. The Motion [#41] has been referred to

the undersigned for a recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B), Fed.

---

[1] While the operative Complaint [#20] is referred to as the "Second Amended Complaint," *see Motion* [#41] at 1; *Order to File Second Amended Prisoner Complaint* [#16], the docket reflects that Plaintiff has filed *three* amended complaints. *See Am. Compls.* [##4, 12, 20].

[2] The Court must liberally construe the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[3] "[#46]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

R. Civ. P. 72(a)-(b), and D.C.COLO.LCivR 72.1(c)(3). *See* [#29]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons set forth below, the Court **RECOMMENDS** that Defendants' Motion [#41] be **GRANTED in part and DENIED in part**.

### I. Background[4]

Plaintiff's claims relate to his confinement in the El Paso County Criminal Justice Center ("CJC"), where he was confined as a pretrial detainee. *Am. Compl.* [#20] at 2. Defendants McAllister and Carter are allegedly deputies and Defendant Bonk is allegedly a sergeant, all with the El Paso County Sheriff's Office ("EPSO"). *Id.* at 1; *Motion* [#41] at 1.

Plaintiff alleges three separate incidents. First, on March 28, 2023, Defendant McAllister "push[ed] [Plaintiff] out of his way when [Plaintiff] was standing next to a cell talking to [another inmate]." *Am. Compl.* [#20] at 4. Second, on April 4, 2023, Defendant Carter blocked Plaintiff from ascending a flight of stairs by "put[ting] his hand on [Plaintiff's] chest [and] pushing[.]" *Id.* When Plaintiff turned and held on to the railing to "try to keep [himself] from falling down," Defendant Carter continued "pushing [him] in the back," and Defendant McAllister "came at" Plaintiff. *Id.* Plaintiff "put [his] left hand up so [that he could] put space," and when Plaintiff "put his hand down," Defendant McAllister "paused [and] then punched [him] in [the] face," causing Plaintiff to fall on his back. *Id.* "When [Plaintiff] was on [his] back not fighting," Defendant McAllister proceeded to "knee[ ] [him] in the

---

[4] To resolve the Motion [#41], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in Plaintiff's Amended Complaint [#20]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

face two times," "place[ ] his knee on [Plaintiff's] face," and "put his weight into [his knee] on [Plaintiff's] face." *Id.* Plaintiff alleges that the assault resulted in scratches and bruising on his face, as well as a chipped tooth. *Id.* at 4-5.

Finally, Plaintiff claims that after these two incidents, on April 4, 2023, Defendant Bonk "placed [Plaintiff] in a holding cell after taking pictures of [his] face where [he] had scratches . . . and a bruise." *Id.* at 5. Plaintiff told Defendant Bonk that the injuries "[were] from his deput[ies]" assaulting him. *Id.* After Defendant Bonk left, Plaintiff alleges that Defendant Bonk "went and had [Plaintiff] placed in the hole where [he] had no contact with any other person for over a month." *Id.*

Plaintiff brings two claims against the Defendants in their individual capacities: (1) Claim One: excessive force, in violation of Plaintiff's Fourteenth Amendment rights, against Defendant McAllister and Defendant Carter; and (2) Claim Two: punishment of a pretrial detainee, in violation of his Fourteenth Amendment rights, against Defendant Bonk. *Id*. at 2, 3.[5]

Defendants argue that Plaintiff's Complaint [#20] should be dismissed for failure to comply with Federal Rule of Civil Procedure 8 because "the essential facts identifying the excessive use of force by Deputies Carter and McAllister remain devoid of necessary

---

[5] Plaintiff had asserted claims against Defendants in their individual and official capacities. *Am. Compl.* [#20] at 2-3. The official capacity claims against Defendants have been dismissed and only his Fourteenth Amendment individual capacity claims remain. *See Order Drawing Case* [#28] at 2. In Plaintiff's Response [#46] he asserts that "the Defendants violated [his] 5th, 8th and 14th Amendments [sic]." *Response* [#46] at 1. However, a party may not amend his complaint through new allegations in response to a motion to dismiss. *See, e.g.*, *Kan. Motorcycle Works USA, LLC v. McCloud*, 569 F. Supp. 3d 1112, 1127 (D. Kan. 2021) (stating that "a party may not amend its complaint by way of arguments in a brief"); *Wilson v. Johnson*, No. 19-cv-2279-CMA-NRN, 2020 WL 5815915, at *5 (D. Colo. Sept. 30, 2020) (stating that it is "well established that [a] [p]laintiff may not amend his [c]omplaint by adding factual allegations in response to [the] [d]efendants' [m]otion to [d]ismiss").

context" and Plaintiff "fail[s] to provide any statement that shows he is entitled to relief." *Motion* [#41] at 3-4. Defendants also seek dismissal under Federal Rule of Civil Procedure 12(b)(6) because "Plaintiff fails to include any 'well-pled facts' in support of his § 1983 claims against the Defendants and instead merely makes a series of 'conclusory statements' regarding the alleged conduct of those Defendants." *Id*. at 5.

Defendants also seek dismissal under Federal Rule of Civil Procedure 12(b)(1) because they assert an "entitle[ment] to qualified immunity" due to Plaintiff's "fail[ure] to establish a violation of a constitutional right." *Id*. at 5-7. However, qualified immunity-dismissal falls under Rule 12(b)(6). *See Lybrook v. Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000); *Kemp v. Lawyer*, 846 F. Supp. 2d 1170, 1172 (D. Colo. 2012) (bearing in mind the Rule 12(b)(6) standard when deciding the qualified immunity defense raised on a motion to dismiss); *see also Thomas v. Kaven*, 765 F.3d 1183, 11984 (10th Cir. 2014) (stating, "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment.").

## II. Legal Standard

### A.   Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir.

2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm Fire & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). In so doing, the Court views these allegations in the light most favorable to Plaintiff, as the non-moving party. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do[,] . . . [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

## B.   Qualified Immunity

The doctrine of qualified immunity "shields government officials performing discretionary functions from liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, [though the decision need not be precisely on point] or if the clearly established weight of authority from other courts shows that the right

must be as plaintiff maintains." *Dodds v. Richardson*, 614 F.3d 1185, 1206 (10th Cir. 2010) (internal quotation marks and citation omitted); *see also Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (noting that on-point precision is unnecessary). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[I]n light of pre-existing law the unlawfulness must be apparent." *Id*. "[T]he notice requirement can be discerned from a range of excessive-force cases that 'illustrate the types of objective circumstances potentially relevant to a determination of excessive force.'" *Wise v. Caffey*, 82 F.4th 1199, 1209 (10th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

When a defendant asserts qualified immunity, the burden shifts to the plaintiff to satisfy a strict two-part test demonstrating that the defense is not applicable. *Fisher v. City of Las Cruces*, 584 F.3d 888, 893 (10th Cir. 2009). First, viewing the evidence in the light most favorable to the plaintiff, the plaintiff must demonstrate that a defendant's actions violated a constitutional or statutory right. *Id*. Second, "the plaintiff must show that the right was clearly established at the time of the alleged unlawful activity." *Id*. The Court may examine the two prongs of qualified immunity in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand").

### III. Analysis

**A.     Claim One: Excessive Force**

"[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989). To establish that "the force deliberately used is, constitutionally speaking, 'excessive,' . . . a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97.[6] "Objective reasonableness under *Kingsley* turns on the 'facts and circumstances of each particular case.'" *Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty., Okla.*, 978 F.3d 1165, 1171 (10th Cir. 2020) (quoting *Kingsley*, 576 U.S. at 397) (internal citation omitted). "In *Kingsley*, the Supreme Court listed non-exclusive factors that may bear on whether an officer's use of force on a pretrial detainee was objectively reasonable: (1) the relationship between the need for the use of force and the amount of force used, (2) the extent of the plaintiff's injury, (3) any effort made by the officer to temper or to limit the amount of force, (4) the severity of the security problem at issue, (5) the threat reasonably perceived by the officer, and (6) whether the plaintiff was actively resisting." *Rowell*, 978 F.3d at 1171-72 (quoting *Kingsley*, 576 U.S. at 397) (internal citations and quotation marks omitted).

---

[6] By contrast, an Eighth Amendment excessive force analysis includes an additional subjective prong, i.e. "whether the defendant acted with a sufficiently culpable state of mind." *Ullery v. Bradley*, 949 F.3d 1282, 1290 (10th Cir. 2020) (internal quotation omitted). In their Motion [#41], Defendants cite to *Lopez v. LeMaster*, 172 F.3d 756 (10th Cir. 1999) for the proposition that "[i]n determining whether a plaintiff's due process rights under the Fourteenth Amendment were violated, the analysis is identical to that applied in Eighth Amendment cases brought pursuant to § 1983." *See Motion* [#41] at 11. However, *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015) essentially overruled *Lopez* as applied to pretrial detainees, as the Tenth Circuit has explicitly noted. *See Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (noting that the "previous statement that the Eighth and Fourteenth Amendment analyses are 'identical[,]'" as set forth in *Lopez*, "is no longer good law after the Supreme Court's decision in *Kingsley*[.]").

The Court examines the *Kingsley* factors, to the extent applicable, as to Plaintiff's excessive force allegations.

### 1.      Defendant Carter

On April 4, 2023, Defendant Carter's alleged use of force consisted only of one push, which typically does not rise to the level of a constitutional violation. *Am. Compl.* [#20] at 4; *see also, e.g.*, *Rowell*, 978 F.3d at 1173 (finding that "it was objectively reasonable for [the officer] to grab [the detainee's] arm and apply modest forward pressure to guide him down the hallway"); *Medina v. David*, No. 14-cv-03037-CBS, 2016 WL 122970, at *5 (D. Colo. Jan. 8, 2016) (stating that, where "[the plaintiff's] claim of excessive force concerns one shove[]" into a car during transport, "[t]he court determines that the claim is not constitutionally cognizable[.]"). Plaintiff does not allege any contextual detail regarding why Defendant Carter needed to use force, and therefore the Court cannot determine whether "the force was . . . proportional to the need presented." *Estate of Booker v. Gomez*, 745 F.3d 405, 424 (10th Cir. 2014). However, because the use of force was so objectively minimal, the Court finds that Plaintiff has failed to state an excessive force claim against Defendant Carter. *Accord Medina*, 2016 WL 122970, at *5 (collecting cases which found that a mere push or shove had failed to state an excessive force claim).

Plaintiff also fails to allege any injury caused by Defendant Carter's alleged push. *Cf. Johnson v. Kellison*, No. 18-cv-02112-RM-KLM, 2020 WL 5748785, at *11 (D. Colo. Sept. 25, 2020) (recommending summary judgment for defendants because "no reasonable jury could find that [the defendant's] use of force was objectively unreasonable" when "[t]here [was] no evidence of any immediate injury or even of later

injury"); *Medina*, 2016 WL 122970, at *6 (stating that even though no bright-line rule requires an excessive force claim to show injury, "alleged injuries reflecting only minimal force may be insufficient to qualify as constitutionally excessive or overcome the officers' entitlement to qualified immunity.") (collecting cases). As Plaintiff alleges neither objectively excessive use of force nor physical injury caused by Defendant Carter, he fails to state Fourteenth Amendment claim that overcomes qualified immunity. *See, e.g.*, *Medina*, 2016 WL 122970, at *6. Because Plaintiff has failed to establish a threshold use of excessive force, the Court declines to examine the remaining *Kingsley* factors.

Accordingly, the Court **recommends** that Plaintiff's Claim One be **dismissed without prejudice** as to Plaintiff's claim that Defendant Carter violated his Fourteenth Amendment rights. *See, e.g.*, *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (stating that "pro se parties generally should be given leave to amend").

## 2. Defendant McAllister

### a. The March 28, 2023 Incident

On March 28, 2023, Defendant McAllister's alleged use of force also consisted of a single push, which typically does not rise to the level of a constitutional violation. *Am. Compl.* [#20] at 4; *see, e.g.*, *Rowell*, 978 F.3d at 1173; *Medina*, 2016 WL 122970, at *5. Plaintiff does not allege any contextual detail regarding why Defendant McAllister needed to use force, and therefore the Court cannot determine whether "the force was . . . proportional to the need presented." *Estate of Booker*, 745 F.3d at 424. Again, because the use of force was so objectively minimal, the Court finds that Plaintiff has failed to state an excessive force claim against Defendant Carter. *Accord Medina*, 2016 WL 122970, at *5.

Plaintiff does not allege any injury caused by Defendant McAllister's alleged push. *Cf. Johnson*, 2020 WL 5748785, at *11; *Medina*, 2016 WL 122970, at *6 (collecting cases). Because Plaintiff alleges neither objectively excessive use of force nor physical injury caused by Defendant McAllister's March 28, 2023 shove, he fails to state a plausible Fourteenth Amendment claim that overcomes qualified immunity. *See, e.g.*, *Medina*, 2016 WL 122970, at *6. Because Plaintiff has failed to establish a threshold use of excessive force, the Court declines to examine the remaining *Kingsley* factors.

Accordingly, the Court **recommends** that Plaintiff's Claim One be **dismissed without prejudice** as to Plaintiff's claim that Defendant Carter violated his Fourteenth Amendment rights *as to the March 28, 2023 incident*.

### b.    The April 4, 2023 Incident

Plaintiff also alleges that, on April 4, 2023, Defendant McAllister "punched [him] in the face" and, "[w]hen [Plaintiff] was on [his] back not fighting[,] McAllister kneed [him] in [the] face two times then placed his knee on [his] face and put his weight in to [sic] it on [his] face." *Am. Compl.* [#20] at 4. Given that, at the time of Defendant McAllister's alleged actions, Plaintiff was merely "try[ing] to keep [him]self from falling down," the Court finds that Plaintiff has plausibly alleged that the amount of force used was objectively excessive. *Id.* Further, Defendant McAllister's conduct allegedly resulted in significant injury, including "scratches," "a bruise on [his] face," and a "chipped . . . tooth." *Id.* at 4-5. Even under the more exacting Eighth Amendment analysis, the Supreme Court has held that similar alleged injuries were not *de minimis* and should have survived dismissal. *See, e.g.*, *Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (stating that "[t]he extent of [the plaintiff's] injuries," which included minor bruises, facial swelling, loosened teeth, and a cracked

dental plate, provided "no basis for dismissal of his § 1983 claim."). Therefore, the Court finds that the first two *Kingsley* factors weigh in Plaintiff's favor.

Given that Plaintiff specifically alleges that Defendant McAllister continued to assault him "[w]hen [he] was on [his] back not fighting," the Court may plausibly infer that Plaintiff was not actively resisting. *Am. Compl.* [#20] at 4. The Complaint [#20] renders unclear how long the incident lasted, and the allegations do not demonstrate any effort to limit the use of force once Plaintiff was subdued. Therefore, to the extent that Defendant McAllister allegedly escalated the use of force on a defenseless Plaintiff, the Court finds that the third and sixth *Kingsley* factors weigh in Plaintiff's favor.

Finally, Plaintiff's allegations lack any detail as to *why* the confrontation occurred and, thus, the allegations render unclear whether Plaintiff ever posed a threat to Defendant McAllister or whether Defendant McAllister had a potential security concern that would justify the use of some force. However, even if Plaintiff did pose a threat to Defendant McAllister or a security concern precipitating the incident, the Court may plausibly infer that, once Plaintiff was "on [his] back not fighting," no apparent threat existed. Therefore, the Court finds that the fourth and fifth *Kingsley* factors weigh in favor of Plaintiff.

Because all the *Kingsley* factors weigh in Plaintiff's favor, the Court finds that Plaintiff has plausibly stated a Fourteenth Amendment excessive force claim against Defendant McAllister relating to the April 4, 2023 incident. Thus, Plaintiff has satisfied the first prong of qualified immunity by plausibly alleging a constitutional violation. Moreover, while discovery may reveal additional information that provides further details about the incident, the Court finds that the right at issue, as alleged in Plaintiff's Complaint [#20],

was clearly established at the time of Defendant McAllister's conduct. *See, e.g.*, *Wise*, 72 F.4th at 1209-10 (collecting Tenth Circuit cases and stating that it was clearly established by October 2018 that "striking" and "kneeing a subdued [pretrial detainee] in the face" where the detainee "posed no immediate security threat" was an objectively unreasonable use of force); *Estate of Booker v. Gomez*, 745 F.3d 405, 428 (10th Cir. 2014) (stating that the "legal norms" relevant to the excessive force claim had been clearly established at the time of the incident in which a pretrial detainee was "handcuffed, prone on his stomach, and not resisting while much of the disproportionate use of force occurred"). Therefore, the Court finds that Defendant McAllister's assertion of qualified immunity fails at this stage of the proceedings. Accordingly, the Court **recommends** that the Motion [#41] be **denied in part** as to Plaintiff's Claim One against Defendant McAllister *as to the alleged April 4, 2023 incident*.

**B.    Claim Two: Punishment of a Pretrial Detainee**

In support of his second claim, Plaintiff alleges that Defendant Bonk violated his Fourteenth Amendment due process rights by placing him "in the hole where [he] had no contact with any other person for over a month." *Am. Compl.* [#20] at 5. Defendants argue that "Plaintiff provides [the] Court with no well-pled facts showing that being held in some sort of segregated housing was 'intended as punishment' nor that it is 'unrelated to a legitimate government objective.'" *Motion* [#41] at 10 (citing *Cordova v. City of Albuquerque*, 816 F.3d 645, 655 n. 5 (10th Cir. 2016)). Defendants further argue that Plaintiff failed to allege that "Sergeant Bonk (1) had the authority to make decisions regarding Plaintiff's housing and (2) made the decision to maintain his housing status in 'the hole' for a month." *Id.* at 10-11.

In *Kingsley*, the Supreme Court reiterated that "pretrial detainees (unlike convicted prisoners) cannot be punished at all[.]" *Kingsley*, 576 U.S. at 401; *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"). Thus, "the constitutionality under a due process analysis of the nature or duration of pretrial detention turns on whether such detention amounts to 'punishment' in the constitutional sense." *Littlefield v. Deland*, 641 F.2d 729, 731 (10th Cir. 1981); *see also Bell*, 441 U.S. at 520, 535 (stating, "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention" in the Due Process context, "the proper inquiry is whether those conditions amount to punishment of the detainee.").

To determine whether imposed restrictions are unconstitutional, the Court considers two questions: (1) whether detention facility officials have an "expressed intent to punish"; and (2) whether, in the absence of an express intent to punish, the restriction has "no reasonable relationship to any legitimate governmental objective" and thus amounts to "unconstitutional punishment." *Jenkins v. O'Neal*, No. 21-cv-03403-RM-MDB, 2023 WL 1784226, at *5 (D. Colo. Feb. 6, 2023) (citing *Blackmon v. Sutton*, 734 F.3d 1237, 1240 (10th Cir. 2013)), *recommendation adopted* 2024 WL 943442 (D. Colo. Mar. 5, 2024).

"If an act by a prison official, such as placing the detainee in segregation, is done with an intent to punish, the act constitutes unconstitutional pretrial punishment." *Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1106 (10th Cir. 2005). Likewise, "if a restriction or condition is not reasonably related to a legitimate [governmental] goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action

is punishment." *Id*. (modification in the original) (quoting *Bell*, 441 U.S. at 539). However, "restraints that 'are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting.'" *Id*. (quoting *Bell*, 441 U.S. at 540); *see also Bell*, 441 U.S. 537 (noting, "confinement in a facility . . . no matter how modern . . . results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial.").   "[N]o process is required if [a pretrial detainee] is placed in segregation not as punishment but for managerial [including safety] reasons." *Peoples*, 422 F.3d at 1106 (quoting *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002)).

In *Peoples*, the Tenth Circuit affirmed dismissal of a pretrial detainee's due process claim arising from his segregation placement because the segregation was not intended as punishment. 422 F.3d at 1107. Specifically, the segregation began due to the jail's lack of bed space in general population and continued because jail officials learned of the detainee's prior plot to escape from his previous pretrial detention facility. *Id*. at 1106-07.

In *Littlefield*, however, the Tenth Circuit affirmed a lower court's finding of a due process violation arising from a mentally ill pretrial detainee's 56-day placement—without notice, a hearing, meaningful review, or legitimate governmental purpose—in "a solitary cell long used by the county to punish disorderly pretrial detainees and to segregate prisoners with severe mental disorders." 641 F.2d at 730-31. The detainee was housed in a cell with no windows, interior lights, bunk, floor covering, or toilet except for a hole in the floor; he was deprived of clothing and bedding; and he had no opportunities to recreate outside his cell or to possess reading or writing materials. *Id*. The detainee

asserted that "this kind and length of confinement without hearing deprived him of due process of law and that it subjected him to cruel and unusual punishment." *Id*. at 731.

Though the district court found no clear evidence of jail officials' intent to punish the plaintiff, it found that "the condition and manner in which [the plaintiff] was maintained could hardly have been any worse than if he were being punished for adjudicated infractions of a serious nature." *Id*. (quoting district court's ruling). Additionally, the district court reasoned that that the "extreme deprivations" which the plaintiff endured for 56 days were "partly retributive, partly precautionary," "unreasonably degrading and inhumane," "masquerade[d] as essential custodial detention" and, therefore, were excessive in relation to the purposes of pretrial detention *Id*. In its affirmance, the Tenth Circuit held that "to hold a pretrial detainee under conditions of detention this extreme for such an excessive period as fifty-six days is punishment and, absent a determination of guilt, cannot be imposed in accordance with the due process clause of the fourteenth amendment." *Id*. at 732 (citing *Bell*, 441 U.S. 520).

Here, Plaintiff alleges almost no detail regarding why Defendant Bonk "went and had [Plaintiff] placed in the hole," except that it occurred after the incident with Defendant McAllister, after Plaintiff told Defendant Bonk that it was "his deputies that assaulted [Plaintiff]." *Am. Compl.* [#20] at 5. While the Court must take all factual allegations as true, it is not required to draw unsupported legal conclusions in his favor (for example, that the decision to put him "in the hole" was punitive in a constitutional sense) or to make inferences based on facts not alleged.

The Court finds that Plaintiff's very minimal allegations are insufficient to survive a motion to dismiss. Plaintiff's allegations fall far short of the bare minimum other courts

have deemed sufficient to survive a motion to dismiss. For example, in *Jenkins v. O'Neal*, No. 21-cv-03403-RM-MDB, 2023 WL 1784226, *6-*7 (D. Colo. Feb. 6, 2023), *recommendation* adopted, 2024 WL 943442 (D. Colo. Mar. 5, 2024), the court denied a motion to dismiss a due process claim where: the plaintiff allegedly "spent approximately 280 days in solitary confinement" as a pretrial detainee, where he was confined in his cell for 23 hours a day with no access to the outdoors; the defendant allegedly acted with intent to punish and provided no opportunity for the plaintiff to be heard or to seek review; and another defendant extended the confinement by 60 days without justification. In rejecting the motion to dismiss, the court noted that at the summary judgment stage, the "[d]efendants will have ample opportunity to present factual evidence refuting [the] allegations and presenting . . . evidence tending to show [the] [p]laintiff was confined based on a legitimate government interest and not to punish." 2023 WL 1784226 at *7.

Plaintiff's allegations are also deficient when compared to the allegations in *Meek v. Koonce*, No. 14-cv-013356-MSK-KLM, 2015 WL 4944076 (D. Colo. Aug. 20, 2015). In *Meek*, the plaintiff alleged that, as a pretrial detainee, he was placed in administrative segregation without notice and despite having been "cleared of any wrong doing [sic]." 2015 WL 4944076 at *1, *5. He complained that he was confined to an unsanitary cell for 23 hours per day, without access to sunlight, socialization, and mental and physical stimulation. *Id*. at *1. The plaintiff further alleged that he was exposed to bright lights 24 hours per day. *Id*. Based on those allegations, the court determined that the plaintiff had alleged just enough for it "to infer . . . that the placement was purposeless." *Id*. (denying motion to dismiss due process claim).

Plaintiff's allegations are also deficient in comparison to those alleged in *Sessions v. Clements*, No. 14-cv-02406-PAB-KLM, 2016 WL 820978 (D. Colo. Jan. 21, 2016), *recommendation adopted*, 2016 WL 814715 (D. Colo. Mar. 1, 2016). In *Sessions*, the plaintiff alleged that, as a pretrial detainee, he was placed in segregation "without any notice of the reason" for nearly nine months, and he believed he was segregated "because of pending criminal charges against him involving sexual assault of a child." 2016 WL 820978, at *2, *7. Based on those allegations, the court determined that it may "infer . . . that the placement was purposeless or impermissibly imposed as punishment" and concluded that the plaintiff stated an actionable procedural due process claim. *Id*. at *7. In sum, unlike in *Meek* or *Sessions*, Plaintiff's allegations render the Court unable to infer that he was placed in segregation as punishment.

Additionally, Plaintiff has not established that his right as a pretrial detainee to be free from administrative segregation "for over a month" after an altercation with jail staff was clearly established on April 4, 2023, when the alleged events occurred. While the Tenth Circuit addressed the unconstitutionality of a pretrial detainee's solitary confinement in *Littlefield v. Deland*, 641 F.2d 729, 731 (10th Cir. 1981), the confinement lasted for 56 days, during which time the plaintiff had no opportunities to be heard or to have a meaningful review, and he was housed in austere conditions which included a lack of clothing, lights, windows, or a toilet (other than a hole in the floor). Thus, to the extent that *Littlefield* clearly establishes a right for detainees to be free from harsh conditions of confinement, that case does not sufficiently put the defendants on notice that segregation "for over a month"—after an altercation with jail staff—with "no contact with any other person" amounts to a constitutional deprivation. Accordingly, even if

Plaintiff plausibly alleged that Defendant Bonk violated his Fourteenth Amendment rights, the Court cannot find that Defendant Bonk's alleged conduct violated clearly established law. Therefore, the Court finds that Defendant Bonk is entitled to qualified immunity.

Accordingly, the Court **recommends** that Plaintiff's Claim Two be **dismissed without prejudice**. *Knight*, 749 F.3d at 1190 (stating that "pro se parties generally should be given leave to amend").

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that Defendants' Motion [#41] be **GRANTED in part and DENIED in part**, as outlined above.

IT IS FURTHER **RECOMMENDED** that Plaintiff's Claim One be **DISMISSED WITHOUT PREJUDICE** as to Defendant Carter and as to the March 28, 2023 alleged incident involving Defendant McAllister.

IT IS FURTHER **RECOMMENDED** that Plaintiff's Claim Two be **DISMISSED WITHOUT PREJUDICE**.[7]

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and

---

[7] Should this Recommendation be adopted in full, only Claim One will remain, to the extent Plaintiff alleges that Defendant McAllister used excessive force against him on April 4, 2023, and all claims against Defendants Carter and Bonk will be dismissed.

recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 19, 2024                              BY THE COURT:

                                                    Kathryn A. Starnella
                                                    United States Magistrate Judge